¶ 12. The issue in this case is not whether expert testimony is required to prove that a physician breaches the standard of care by operating on the wrong eyelid of his patient. I would agree that, in such circumstances, expert testimony is not required to prove that a breach of the standard of care occurred. Rather, the issue here is whether expert testimony is required to establish the standard of care owed to a patient by a hospital employee with respect to the nature of information which must be shared ultra vires by the employee during a continuing authorized medical procedure. Stated another away, the issue is whether expert testimony was required to establish whether Shirley Phillips breached the standard of care when she refused, during a continuing medical procedure, to inform Stephanie Smith, without being authorized to do so, that Dr. G. Edward Bryant had operated on the wrong eyelid of Smith's son, Jordan.[1] In my opinion, under such circumstances, expert testimony is required to determine the standard of care. Therefore, I dissent from the majority's holding that the issue presents a purely factual matter within the scope of a layperson's knowledge.
 ¶ 13. In reaching its decision, the majority overlooks the significance of the relationship between a physician and an assisting nurse, as well as the relationship between a physician and his patient. First, the nurse is subject to the control and supervision of the physician. Second, it is the responsibility of the physician to communicate directly, or via his authorized designee, with his patient. It is the physician who makes the determination as to what information should be shared with the patient, as well as when to share the information. The premature release of medical information, whether to the patient or another, can sometimes have severe negative consequences for the patient. In my judgment, a layperson is ill equipped to know the exact point in time, during a medical procedure, when information regarding a medical mishap should be shared with the patient. *Page 251 
 ¶ 14. Dr. Bryant instructed nurse Phillips to call and confirm with Smith that the right eyelid of Smith's son was the correct eyelid upon which the surgical procedure should be performed. He did not instruct or authorize her to update Smith on how the procedure was going or had gone. Therefore, any communiqué from Phillips to Smith regarding what had transpired in the operating would have been ultra vires. I cannot accept that whether Phillips should have acted beyond her authority in communicating with Smith regarding an ongoing medical procedure[2] was a "purely factual matter" within the scope of a layperson's knowledge, as articulated by the Mississippi Supreme Court in Kelley v. Frederic,573 So.2d 1385, 1388 (Miss. 1990). Therefore, I respectfully dissent.
 ¶ 15. I would affirm the grant of summary judgment.
SOUTHWICK, J., JOINS THIS OPINION.
[1] Shirley Phillips was the operating room nurse and employee of Gilmore Memorial Hospital. Stephanie Smith is the mother of Dr. Bryant's minor patient, Jordan Kyle Smith.
[2] Even though Dr. Bryant had already operated on the patient's left eyelid, he had determined that, upon Smith's confirmation as to the correct eye, he would perform the surgical procedure on the correct eyelid and in form Smith postoperatively of his mistake regarding the left eyelid. In fact, immediately after the procedure, Dr. Bryant did discuss the procedure and his mistake with Smith.